UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANAE Y. BALL,

    Plaintiff,

v.                                                                                                    Case No. 13-12827

                                                             HON. AVERN COHN

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 17), DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 19), AND REMANDING CASE

### I. INTRODUCTION

      This is an action appealing the denial of an application for Supplemental Security Income (SSI) benefits under the Social Security Act (SSA). Janae Ball (Plaintiff) appeals the Commissioner of Social Security's (Defendant) denial of her application for SSI benefits.

      Before the Court are the parties' cross-motions for summary judgment. (Docs. 17, 19). For the reasons explained below, there is a lack of substantial evidence supporting the decision of the Administrative Law Judge that Plaintiff's impairments are not sufficiently severe to constitute an intellectual disability. Plaintiff's Motion for Summary Judgment (Doc. 17) and Defendant's Motion for Summary Judgment (Doc. 19) are DENIED. The decision of the Commissioner to deny Plaintiff benefits is REVERSED, and the matter is REMANDED for a determination consistent with this

1

opinion.

## II. BACKGROUND

### A. Plaintiff's History

Plaintiff was born on June 22, 1983, and was 27 years old at the time she applied for SSI benefits. She attended school until the 11th grade, and has past work experience as a fast food worker. Plaintiff has earned some income through self-employment after her SSI application was filed, but this work activity did not rise to a level that would disqualify her application.

### B. Procedural History

Plaintiff filed an application for SSI benefits on November 12, 2010, alleging disability from gainful employment since July 3, 2009. Plaintiff claimed that she was unable to work due to several debilitating conditions: a learning disability, loss of vision in the right eye, and hypertension. (Tr. at 60)

Plaintiff's application was initially denied on May 10, 2011. At Plaintiff's request, a hearing was held before an administrative law judge (ALJ) on February 9, 2012. (Tr. at 58) On March 29, 2012, the ALJ issued an unfavorable decision, finding that Plaintiff retained the residual functional capacity (RFC) to perform a range of work at all exertional levels, provided she was limited to: simple, routine, and repetitive tasks; no tasks requiring peripheral vision to the right eye or bilateral vision; and no frequent reading, writing, or calculations above the 8th grade level.

This became the final determination of the Commissioner when the Appeals Council denied Plaintiff's request for review on March 26, 2013. (Tr. at 73-75) The

instant action followed.

## C. Plaintiff's Medical Impairments

**1.**

The ALJ began his decision by describing Plaintiff's claimed impairments—specifically, her claims that she is blind in one eye and has a learning disability. With regard to Plaintiff's eye problems, the ALJ described the following medical evaluations and diagnoses:

- July 4, 2009 hospital records, in which Plaintiff stated that she suffered headaches and could not see out of her right eye. MRI results of her brain indicated no acute abnormalities, but revealed some abnormalities in her right optic nerve. (Tr. at 335). Plaintiff was diagnosed with optic neuritis.

- July 31, 2009 records indicating that Plaintiff's visual acuity in her right eye had improved. Plaintiff indicated that although she could not see colors, she could see movement, and reported no eye pain.

- August 15, 2010 emergency room records at which Plaintiff complained of eye pain. Plaintiff's eye exam came back normal, with visual acuity in the left eye of 20/25 minus one letter; right eye of 20/20 minus one letter, and both eyes of 20/15 minus one letter. The responding physician stated Plaintiff's history of optic neuritis, placed Plaintiff on steroids, and recommended that Plaintiff follow-up with ophthalmology (the branch of medicine that deals with the anatomy, physiology and diseases of the eye).

- September 9, 2010 treatment for optic neuritis. Plaintiff had been experiencing progressively worsening eye pain over the last month, as well as decreased visual acuity in the right eye over the previous several days. Plaintiff was admitted and, over the course of the next several days, was treated with soloumedrol and oral prednisone. The record also stated that Plaintiff failed to follow up afterward with neuro-ophthalmology as directed after her August 2010 emergency room visit, as well as Plaintiff's prior episode of optic neuritis in July 2009, which was resolved with similar treatment (Tr. at 416).

    In addition, Plaintiff was evaluated for the possibility of multiple sclerosis, and an MRI and a lumbar puncture were performed (Tr. at 393). Related to the multiple sclerosis evaluation, records stated that Plaintiff had experience some paresthesia and "waxing/waning sensory changes" (Tr. at 412).

3

**2.**

Turning to the Plaintiff's learning disabilities, the ALJ first observed that Plaintiff failed to attend a scheduled consultative examination on March 4, 2011 (Tr. at 317). On May 9, 2011, an independent psychological examination was performed by Nick Boneff, Ph.D, discussing Plaintiff's IQ scores. Plaintiff scores show a verbal IQ of 70, a performance IQ of 69, and a full scale IQ of 67. Dr. Boneff also stated that, while Plaintiff was a student in the Toledo Public Schools, a 1993 assessment indicated a verbal IQ of 80, performance IQ of 83, and a full scale IQ of 80, which represents a low-average range of intelligence (Tr. at 61). Dr. Boneff said that although Plaintiff reported a head injury from an earlier car accident, the significant drop in IQ was probably not the result of any injury, but rather an "under-representation of her actual cognitive abilities . . ." (Tr. at 322). Dr. Boneff explained that although Plaintiff "demonstrated moderate difficulties in most areas of cognitive functioning," her strengths were in immediate and short term memory; therefore, whatever cognitive changes occurred from the car accident, she retained "sufficient cognitive capacities to engage successfully in simple 'hands on' activities . . ." (*Id.*)

**3.**

Finally, the ALJ made a number of credibility-related determinations. The ALJ observed that Plaintiff has not sought medical treatment on a regular basis, nor has she followed recommendations of her treating doctors to follow up with ophthalmology. In addition, the ALJ stated that "the claimant's financial interest in the outcome and the evidentiary inconsistencies detract from reliance on the claimant's testimony as a basis

4

for decision-making. . . . When evaluated, the claimant's subjective complaints are found to be exaggerated and inconsistent with the other evidence." (Tr. at 65). The ALJ said that Plaintiff's statements regarding her income during 2010—a period during which she claimed to be unemployed—further reflected poorly on her credibility. The ALJ finally described Plaintiff's inconsistent statements regarding whether she was a smoker and drank alcohol, as well as Plaintiff's claim that she was blind in her right eye, despite a normal eye exam on August 15, 2010 and symptoms that "wax and wane."

### D. The ALJ's Disability Findings

Based on the evidence, the ALJ determined that Plaintiff's impairments do not meet the level of severity required to qualify for disability benefits.

The ALJ analyzed Plaintiff's claimed learning disability as an "intellectual disability" under Social Security Listing 12.05, which describes "a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Relevant here, the ALJ then set forth the elements for finding an intellectual disability under Listing 12.05(C), which requires (1) "a valid verbal, performance, or full scale IQ of 60 through 70," plus (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* at § 12.05(C).

The ALJ then described Plaintiff's May 9, 2011, IQ scores: a verbal IQ of 70, a performance IQ of 69, and a full scale IQ of 67. These scores fall within the IQ range required under Listing 12.05(C).

5

The ALJ next considered whether Plaintiff had "a physical or other mental impairment imposing an additional and significant work-related limitation of function," and determined that she did not. The ALJ again stated that although Plaintiff had been diagnosed with optic neuropathy, "her symptoms wax and wane and are infrequent" (Tr. at 61). The ALJ also discussed Plaintiff's August 15, 2010 normal eye exam results. Finally, the ALJ found that Plaintiff's hypertension is adequately controlled through medication, and concluded that Plaintiff failed to meet the standards of Listing 12.05(C) (Tr. at 61-62).

### III. STANDARD OF REVIEW

Once the Appeals Council concludes there is no reason to alter the ALJ's decision and denies a claimant's request for review, the decision of the ALJ becomes the final administrative decision of the Commissioner. 20 C.F.R. § 416.1484(b)(2). This Court reviews the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Judicial review under the statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). If the Commissioner's decision is

supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that the Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286 (internal citations omitted). Further, this Court does "resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

## IV. PLAINTIFF'S OBJECTIONS

Plaintiff has advanced two primary objections to the ALJ's decision. First, she

says that the ALJ's finding that she does not meet the requirements of Listing 12.05(C) is not supported by substantial evidence. Second, she argues that the ALJ made an erroneous credibility determination. Because Plaintiff's first argument is persuasive, her second argument will not be discussed.

**A.**

At the outset, it must be said that the ALJ's decision relied on a factual error. Repeatedly, the ALJ stated that Plaintiff's symptoms relating to her optic neuropathy "wax and wane" (Tr. at 61, 64, 66). Evidently, the ALJ based this observation on Plaintiff's medical records from September 9, 2010, which described "some waxing/waning sensory changes"[1] (Tr. at 412). However, these records reveal that Plaintiff's sensory changes and paresthesia were described in the context of a possible diagnosis of *multiple sclerosis*—separate and unrelated to Plaintiff's symptoms from optic neuritis. (*See id.*) Therefore, the ALJ's description of Plaintiff's optical neuritis symptoms as "waxing and waning" appears to be in error.

Plaintiff's counsel, however, did not reference the ALJ's oversight and did not proffer any argument that the ALJ's determination was in error because of it.[2] Without expressly referencing this error, Defendant says that any arguments that Plaintiff failed to raise must be deemed waived. However, the Court's review is not so limited. When

---

[1] The ALJ provided only one citation to the record for the observation that Plaintiff's symptoms "wax and wane"—Plaintiff medical records from Plaintiff's second episode of optic neuritis on September 9, 2010.

[2] It should also be noted that Plaintiff's Motion for Summary Judgment (Doc. 17) and Reply Brief (Doc. 21) is riddled with other errors. Numerous times, Plaintiff's brief refers to Plaintiff—a female—as a male. In addition, Plaintiff's briefs refer to "her past relevant work as a data entry clerk" (Doc. 19 at 14, Doc. 21 at 7) which has no support in the record and is apparently copied from some other claimant's brief. Finally, entire portions of the Reply are copied verbatim from the Motion for Summary Judgment.

8

reviewing the Commissioner's final decision for substantial evidence, the Court is charged with "examin[ing] the evidence in the record taken as a whole, and must take into account whatever in the record fairly detracts from its weight." *Wyatt*, 974 F.2d 683 (internal quotations and citations omitted).

**B.**

As explained by the Sixth Circuit, in order to establish an "intellectual disability" under Listing 12.05(C), a claimant must show that:

> (1) he experiences "significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period" (*i.e.*, the diagnostic description); (2) he has a "valid verbal, performance, or full scale IQ of 60 through 70"; and (3) he suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function."

*West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 697-98 (6th Cir. 2007) (quoting Listing 12.05(C)).

Here, the ALJ erred when considering the third prong, *i.e.*, in determining that Plaintiff did not have "an additional and significant work-related limitation of function." (Tr. at 61) This was based, in substantial part, on the ALJ's finding that "[w]hile the claimant may have optic neuropathy[,] her symptoms wax, wane, and are infrequent." (*Id.*)

As described above, this determination was based on a misreading of the record, and the unsupported statement that Plaintiff's symptoms related to optic neuropathy "wax and wane." Indeed, the record reveals that between August and September 2010, Plaintiff's symptoms related to optic neuritis became steadily worse, eventually resulting in a temporary loss of vision. In addition, as Plaintiff argues, the ALJ had *already*

9

determined that Plaintiff suffers from a learning disability, loss of vision in the right eye, and hypertension—impairments that cause "more than a minimal limitation on her ability to perform basic work activities." (Tr. at 9-10).

Therefore, the ALJ's determination that Plaintiff does not suffer from "a physical or other mental impairment imposing an additional and significant work-related limitation of function" is not supported by substantial evidence.

## C.

Defendant concedes that the ALJ "may have erred" in determining that Plaintiff failed to meet the third prong of Listing 12.05(C), given that the ALJ had determined that Plaintiff's right-eye vision loss is a severe impairment causing work-related limitations. (Doc. 19 at 9). Defendant argues, however, that any such an error would be harmless, since Plaintiff does not satisfy the diagnostic description, *i.e.*, the first requirement under Listing 12.05(C). To satisfy the first prong, the diagnostic description, a claimant must demonstrate "(1) subaverage intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations." *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009).

Here, Defendant argues that Plaintiff cannot satisfy the diagnostic description because no psychologist has diagnosed Plaintiff with mental retardation, which the Defendant claims is essential to establishing the requisite deficit in adaptive function. Although Defendant's factual premise is correct, its legal argument lacks merit. Defendant presents several cases in support where the claimants' lack of formal diagnosis of mental retardation was a consideration—though not itself dispositive—in

10

determining that the claimant did not have the requisite deficits in adaptive functioning. Indeed, as Plaintiff argues, neither the Social Security Administration, nor the Sixth Circuit, has required that a person be formally diagnosed with "mental retardation"; rather, the diagnostic description can be satisfied by meeting the requirements noted above.

Defendant further says that Plaintiff cannot establish that her subaverage intellectual functioning and deficits in adaptive functioning began prior to age 22. Defendant points to Plaintiff's 1993 IQ assessment, which revealed scores between 80 and 83—higher than the 60-70 range required under Listing 12.05(C).

However, the ALJ made no findings on whether Plaintiff met the requirements of the diagnostic description. Although Plaintiff's 1993 IQ assessment establishes that she had an IQ above the required range when she was 10 years old, there conceivably may be addition evidence in the record demonstrating that Plaintiff fell within that range by the time she reached 22. Here as well, the ALJ's decision does not establish substantial evidence to conclude that Plaintiff did not experience "significantly subaverage general intellectual functioning with deficits in adaptive functioning" by the time she reached 22 years old.

## V. CONCLUSION

For the above reasons, the ALJ's decision is not supported by substantial evidence. Accordingly, the decision of the Commissioner to deny Plaintiff benefits has been reversed, and the matter remanded for a determination consistent with this opinion. On remand, the ALJ must determine whether Plaintiff, in light of the available

2:13-cv-12827-AC-MJH Doc # 24 Filed 01/21/15 Pg 12 of 12 Pg ID 535

medical records, meets the requirements of Listing 12.05(C).

SO ORDERED.

                                               s/Avern Cohn
                                               AVERN COHN
                                               UNITED STATES DISTRICT JUDGE

Dated: January 21, 2015

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, January 21, 2015, by electronic and/or ordinary mail.

                                               S/Sakne Chami
                                               Case Manager, (313) 234-5160

12